# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 13cr1514 JM |
|---|---|
| Plaintiff, | ORDER DENYING MOTION TO DISMISS INDICTMENT |
| v. | |
| ABDIAZIZ HUSSEIN, | |
| Defendant. | |

Defendant Abdiaziz Hussein moves to dismiss the indictment based upon outrageous government conduct, selective prosecution, vindictive prosecution and the court's inherent supervisory powers. The Government opposes the motion. For the reasons set forth below, the court denies the motion in its entirety.

## BACKGROUND

<u>The Indictment</u>

On April 23, 2013, Defendant was charged in a four-count indictment with one-count of conspiracy to avoid recordkeeping requirements, to maintain records, and to file SARs ("Suspicious Activity Reports "), and three-counts of evading the reporting and recordkeeping requirements of 31 U.S.C. §§5313(a), 5324(a)(3), 5325 and 31 C.F.R. §103.33. The charges allegedly arise from Defendant's conduct as general manager of Shidaal Express, a money service business owned by Mohamud Ahmed, with two locations in San Diego that primarily served customers from Somalia and

other East African nations.[1] (Indictment ¶2). The central allegation against Defendant is that he structured several money transfer transactions to avoid federal reporting requirements by listing false names of the senders and/or the recipients of the monetary transfers.

Shidaal Express, a domestic financial institution, was the entity used by the defendants in United States v. Moalin, et al., No. 10cr4246 JM, to transfer money to Somalia. The operative Second Superseding Indictment in Moalin, filed on June 8, 2012, alleged five counts against Defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh, and Ahmed Nasir Taalil Mohamud: (1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. §2339A(a); (2) conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §2339B(a)(1); (3) conspiracy to launder monetary instruments in violation of 18 U.S.C. §1956(h); (4) providing material support to terrorists in violation of 18 U.S.C. §2339A(a); and (5) providing material support to a foreign terrorist organization in violation of 18 U.S.C. §§2339B(a)(1) and (2). (Ct. Dkt. 147). On February 22, 2013, the jury found Defendants guilty on all Counts charged in the Superseding Indictment.

<u>Defendant's Proffer in Support of His Motions</u>

In support of his motions, Defendant submits his declaration, an amended declaration, the declaration of counsel, and a proffer agreement provided in discovery. Defendant represents that, in 2009, he was contacted by the FBI and initially declined to speak with them. On November 5, 2010, Defendant received a grand jury subpoena and was provided with appointed counsel. He was advised by counsel not to invoke his 5th Amendment rights. He was also advised to meet with Assistant United States Attorneys ("AUSA") William Cole and Caroline Han. He spoke with FBI agents and the AUSAs on two occasions for about 16 hours. (Ct. Dkt. 47; Hussein Decl. Exh.2). During these interviews, he was "told they did not want to ruin my life and promised

---

[1] In 2009, the SEC filed an enforcement action against Shidaal Express and effectively shut down the business.

that I would not be prosecuted if I cooperated. The government requested additional meetings and I declined indicating that I had nothing else to offer." (Hussein Decl. ¶¶6, 7).

On December 29, 2010, Defendant and the Government entered into a Proffer Agreement wherein the parties agreed that the Government would not use any statements made by Defendant during the proffer process against him except to discover other evidence or for impeachment purposes. (Ct. Dkt. 47; Hussein Decl. Exh.4). The Proffer Agreement only applied to statements made by Defendant during the proffer sessions. Id.

**Motion to Dismiss for Outrageous Government Conduct**

Defendant argues that the Government engaged in outrageous conduct by (1) using the threat of a grand jury subpoena to compel his attendance at interviews; (2) the promise of no consequences if he talked to the prosecutors; and (3) the "punishment" of an embarrassing and humiliating arrest and to face charges for violation of currency regulations.

"Outrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." United States v. Montoya, 45 F.3d 1286, 1300 (9th Cir. 1995) (citing Hampton v. United States, 425 U.S. 484 (1976); United States v. Russell, 411 U.S. 423, 431-32 (1973)). Under the "extremely high standard" of this doctrine, an indictment should be dismissed "only when the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." Id. (quoting United States v. Garza-Juarez, 992 F.2d 896, 904 (9th Cir. 1993)).

Here, the Government's conduct is not so severe as to shock the universal sense of justice. Whether, under the totality of the circumstances, the Government prefers, favors, pressures, or cajoles a witness to choose between an interview and grand jury

1  testimony, no constitutional violation arises from such conduct.[2] Similarly, the fact that
2  Defendant was arrested while in a state of semi-undress and placed in view of female
3  relatives does not violate any identifiable constitutional right. While many defendants
4  may indeed prefer to self-surrender to avoid the stigma of a public arrest, the
5  constitution is not violated when the police, with a validly issued warrant, arrest an
6  individual while the individual is found in the bathroom partially clothed.

7  Defendant next contends that there was an enforceable contractual obligation on
8  the part of the Government to refrain from prosecuting Defendant. Notably, there is no
9  evidence to support this argument. Defendant declares that Government agents
10 "promised that I would not be prosecuted if I cooperated." (Hussein Decl. ¶6). The
11 next paragraph establishes that Defendant did not cooperate with the Government
12 agents. Defendant declares that the "government requested additional meetings and I
13 declined indicating that I had nothing else to offer." (Id. ¶7). The fact that Defendant
14 declined all further requests to meet with Government agents demonstrates that he did
15 not fully cooperate as allegedly promised and therefore did not satisfy the condition that
16 he fully cooperate with the Government. Moreover, the Proffer Agreement itself
17 undermines Defendant's claim that he would not be prosecuted if he cooperated. The
18 Proffer Agreement specifically limits the use of any statements made by Defendant
19 during the proffer session. However, the Agreement specifically noted that any
20 statement made by Defendant during the proffer session could be used for impeachment
21 purposes at the time of trial or that the statements could be used to discover additional
22 evidence. (Exh. 4). Thus, the Proffer Agreement contemplated that Defendant could
23 be prosecuted, even if he cooperated, because the Agreement provided that Defendant's
24 statements could be used for impeachment purposes at the time of trial or that newly
25 discovered evidence, derived from his statements, could be used against him.

26  Finally, the court notes that the Government strongly denies that any of its agents

27
28  [2] The court notes that Defendant does not allege (or submit any evidence) that he was physically tortured or that government agents employed psychological coercion. Furthermore, at all relevant times, Defendant was represented by counsel.

1  promised Defendant that he would not be prosecuted if he cooperated. The court
2  concludes that the statement in Defendant's declaration (the government "promised that
3  I would not be prosecuted if I cooperated," Exh. 4 ¶6) is not an enforceable promise,
4  particularly where Defendant represents that he declined all further invitations to meet
5  with Government agents based on his own subjective belief "that [he] had nothing else
6  to offer" during the proffer sessions. (Id. ¶7).

7  In sum, the court denies the motion to dismiss based upon alleged government
8  misconduct.

**Motion to Dismiss for Selective Prosecution**

Defendant argues that he had an impoverished childhood in Somalia, the amount of money involved in the money transfers was small, and it "looks as if it [the Indictment] was filed because the government could not link Mr. Hussein to other more serious charges." (Motion at p.7:17-21). From this statement, Defendant asserts, without an evidentiary basis, that "there is no question that Mr. Hussein is being discriminated against." He then concludes that his prosecution is "arbitrary, racially and ethnically based series of allegations which must be dismissed out of hand." (Motion at p.7:25:26). Defendant also states that the prosecution "of currency rules does not exist with any other racial or ethic group" and that an arresting agent allegedly stated that he was arrested "to set an example to a distinct ethnic community." (Motion at p.8:6-7). Defendant cites no facts to support his broad hyperbolic arguments. The cited authority, United States v. Armstrong, 517 U.S. 456, 464 (1996), does not support Defendant's argument.

The Government correctly notes that a defendant in a selective prosecution claim must "demonstrate that the federal prosecution policy had a discriminatory effect and that it was motivated by discriminatory purpose." Armstrong, 517 U.S. at 465. Courts give a great amount a deference to the decision to prosecute, accepting that a number of factors contribute to the decision. The factors include "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and

the case's relationship to the Government's overall enforcement plan." Id. To overcome the presumption that the prosecution "has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" Id.

Here, Defendant fails to submit any evidence of selective prosecution. At most, Defendant argues that the present action was commenced against Defendant because "the government could not link Mr. Hussein to other more serious crimes (apparently the terrorism related crimes asserted against the defendants in Moalin)." (Motion at p.7:18-19). Similarly, Defendant's position is not furthered by his argument that the prosecution of "currency rules does not exist with any other racial or ethnic group." (Motion at p.7:8-9). Defendant cannot prevail on a selective prosecution claim by making unsubstantiated conclusory allegations to the effect that no other racial or ethnic group has been prosecuted for currency violations. Without evidentiary support, Defendant cannot prevail on his selective prosecution claim. The asserted unsubstantiated and conclusory statements simply fail to overcome the presumption that the Government has not violated Defendant's equal protection or due process rights.

In sum, the court denies the motion to dismiss for selective prosecution.

**Motion to Dismiss Based Upon Vindictive Prosecution**

Defendant argues that he was charged with currency violations because the Government concluded that he could not be prosecuted for terrorism. Defendant seeks to place on the Government the burden of proving that "they have not acted vindictively." (Motion at p.9:3).

To make a prima facie claim of prosecutorial vindictiveness, a defendant must establish: (1) direct evidence of actual vindictiveness; or (2) "[e]vidence indicating a realistic or reasonable likelihood of vindictiveness" that "give[s] rise to a presumption of vindictiveness on the government's part." United States v. Lopez, 474 F.3d 1208, 1211 (9th Cir. 2007). "The presumption applies only to the extent it reflects the very real likelihood of actual vindictiveness." United States v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir. 1982).

In the context of demonstrating presumptive vindictiveness, the Ninth Circuit has stated:

> [T]he link of vindictiveness cannot be inferred simply because the prosecutor's actions followed the exercise of a right, or because they would not have been taken but for exercise of a defense right. Rather, the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights.

Id. at 1168-69.

There is also a distinction drawn between pretrial and post-trial prosecutorial vindictiveness. In the pretrial case, a prosecutor may simply realize that the information collected may have a broader significance. At an early stage in the process, the "prosecutor's assessment of the proper extent of the prosecution may not have crystallized." United States v. Goodwin, 457 U.S. 368, 381(1982); see also Gallegos-Curiel 681 F.2d at 1168. As such, the prosecutor "should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." Id. (citing Goodwin, 457 U.S. at 382).

Here, Defendant fails to submit any evidence of actual vindictiveness or evidence giving rise to a realistic likelihood of vindictiveness. "A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." Lopez, 474 F.3d at 1211. The fact that Defendant grew up in poverty in Somalia, is Somali, and allegedly violated currency reporting requirements with relatively minor sums of money is insufficient to give rise to an inference of vindictiveness. In Lopez, the defendant argued that the indictment should be dismissed based upon vindictive prosecution because the prosecution arose from the "same facts" as his state guilty plea; the federal government indicted defendant because he refused to cooperate; the AUSA assigned to the case, and the state prosecutor on the state charge, agreed to dismiss the state action if the defendant was indicted on the federal charges but failed to do so; the threats of the FBI of "serious time" if he did not

1. cooperate; and his failure to cooperate with government agents. Id. The Ninth Circuit
2. rejected these grounds as a basis to dismiss an indictment for vindictive prosecution.
3. The Ninth Circuit also noted that a prosecutor and other government agents "may
4. threaten a defendant with prosecution during an interview or plea negotiations, and if
5. that defendant chooses not to cooperate or plead guilty, the prosecutor is free to initiate
6. a prosecution." Id. at 1212. Because the allegations of vindictive prosecution, even if
7. they were supported by evidence, fail to establish a prima facie case of vindictiveness,
8. the burden never shifts to the Government to submit independent evidence to rebut
9. Defendant's non-existent evidence of vindictiveness.
10. In sum, the court denies the motion to dismiss for vindictive prosecution.

**Motion to Dismiss Pursuant to the Supervisory Powers of the Court**

Defendant also seeks dismissal of the indictment pursuant to the general supervisory powers of the court. The court concludes that there is no grounds to dismiss the indictment.

The Supreme Court has identified only three legitimate grounds for the exercise of the supervisory powers of the court: "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991) (citing United States v. Hasting, 461 U.S. 499, 505 (1986)). Defendant does not identify any statutory or constitutional violation, there is no record to determine whether any jury verdict will be based on appropriate considerations, and the conduct alleged by Defendant is not illegal.

In Simpson, an FBI agent employed a prostitute, heroin user, and fugitive from Canadian justice to meet with a suspected international drug smuggler, defendant Simpson. The FBI agent sent the informant to meet with the defendant at Los Angeles International Airport. The informant was successful and developed a "sexually and emotionally intimate relationship [with Simpson] of some duration." Id. at 1089.

13cr1514

1 Simpson procured heroin for the informant and the FBI agent. Throughout the
2 investigation, the informant engaged in prostitution, heroin use, and shoplifting. The
3 "FBI allowed [the informant] to keep a $10,000 profit from one of the heroin sales she
4 arranged." Id.

5 The district court found that due process was violated when the FBI (1)
6 manipulated the individual to become an informant, (2) continued to use the informant
7 after she became involved with the defendant, and (3) continued to use the informant
8 after learning that the informant continued to engage in prostitution, heroin use, and
9 shoplifting. United States v. Simpson, 813 F.2d 1462 (9th Cir.) cert. denied, 484 U.S.
10 898 (1987). Notably, there was no evidence to suggest that the FBI directed the
11 informant to engage in sexual relations and heroin use with the defendant. In fact, the
12 FBI agent warned the informant to refrain from sexual activity with defendant. The
13 Ninth Circuit reversed, holding that the government conduct was not so shocking as to
14 violate due process. The Ninth Circuit noted that it was not outrageous conduct for the
15 government "to direct an informant to participate in the very criminal enterprise that is
16 under investigation." Id. at 1470.

17 Upon remand, the district court again dismissed the indictment based upon its
18 inherent supervisory powers. The Ninth Circuit again reversed, noting that there was
19 not a proper legal basis cited by the district court. 927 F.2d at 1090. Further, even if
20 the district court had identified a proper legal basis, dismissal of the indictment was not
21 a proper remedy. Id.

22 Here, Defendant declares that AUSA Han told him he was un-American.[3]
23 (Hussein Decl. ¶5). In a supplemental declaration, Defendant declares that he was
24 detained by FBI agents while he was in the bathroom brushing his teeth, dressed only
25 in pajamas. He asked the agents to allow him to spit out the toothpaste foam and to put
26 on a pair of boxers. The agents denied his request. (Supp. Hussein Decl. ¶2). When
27 placed against a wall in front of his family, the "pajamas became loose and completely
28

---

[3] The court notes that the AUSA disputes ever having made such a comment.

1 fell down." Id.  At some point in time, Defendant was provided with a cup to dispose
2 of the toothpaste foam.  Once at FBI headquarters, an FBI agent told him that his
3 community was "a cesspool . . . cancer . . . don't belong here." (Id. ¶3).  The agent also
4 asked Defendant to provide information about other people and that he would receive
5 money for this information.  When taken to the station, the agent said, "have fun." (Id.)

6     Here, the events that allegedly occurred on the day of Defendant's arrest, even
7 if true, fail to establish any statutory or constitutional violation.  Moreover, Defendant
8 cites no authority finding that such conduct comes close to establishing a constitutional
9 violation. Similarly, Defendant fails to explain how the dismissal of the indictment will
10 preserve judicial integrity and ensure that the jury's decision rests on "appropriate
11 considerations validly before [it]."  Simpson, 927 F.2d at 1090 (quoting Hasting, 461
12 U.S. at 505).  Finally, the third basis for the court to exercise its supervisory powers (to
13 deter future illegal conduct) does not apply as Defendant does not identify any illegal
14 conduct on the part of government agents.

15     In sum, the court denies the motion to dismiss the indictment based upon the
16 court's inherent supervisory powers.

17     In conclusion, the court denies the motion in its entirety.

18 **IT IS SO ORDERED.**

19 DATED: April 7, 2014

20                                                                                              _____
21                                                                                             Hon. Jeffrey T. Miller
                                                                                            United States District Judge

22
23
24
25
26
27
28